UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01783-SEB-TAB |
| | ) | |
| MARIA D TURRUBIARTES; | ) | |
| JOSE LUIS HERNANDEZ; | ) | |
| CARNICERIA MI MEXICO, CORP. | ) | |
| doing business as TACO TORRO AKA EL | ) | |
| TACO TORO MEXICAN | ) | |
| RESTAURANT, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

This cause is before the Court on Plaintiff's motion for default judgment [Dkt. No. 16], as supplemented on February 27, 2017 [Dkt. No. 22]. Defendants have not responded and the time for doing so has now passed. The Court GRANTS the motion for the reasons set forth below.

**Standard**

Following a clerk's entry of default, "the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "[O]nce a default has been established, and thus liability, the plaintiff must establish his entitlement to the relief he seeks." *J&J Sports Productions, Inc., v. The Old School Way, LLC*, No. 15-c-449, 2015 WL 4623598, at *1 (E.D. Wisc. July 30, 2015) (citing *In re Catt*, 368 F.3d 789,

793 (7th Cir. 2004)). Therefore, on proper application by a party for entry of default judgment, the court must conduct an inquiry to ascertain the amount of damages with "reasonable certainty." *Id*.

**Background**

Plaintiff J&J Sports Productions, Inc. ("J&J") purchased the proprietary rights to distribute *Manny Pacquiao v. Juan Manuel Marquez III, WBO World Welterweight Championship Fight Program*, which was broadcast Saturday, November 12, 2011 (the "Fight"). After purchasing the rights to the Fight, J&J entered into sublicensing agreements with various commercial establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs) to permit public exhibition of the Fight.

Defendants Maria D. Turrubiartes, Jose Luis Hernandez, and Carniceria Mi Mexico, Corp. Inc. are owners of Defendant Taco Torro a/k/a El Taco Toro Mexican Restaurant located at 7853 North Michigan Road, Indianapolis, Indiana 46268. Private investigator Jason A Williams entered El Taco Torro at 9:27 p.m. on November 12, 2011. Williams did not pay a cover charge to enter the restaurant and did not place an order for food or alcohol. Williams was told that "the restaurant normally closes at 9 p.m., but that [he] was welcome to order food for the fight." [Affidavit of Jason A. Williams, Dkt. No. 22-5 ("Williams Aff.").] During his eight minutes in the restaurant, Williams observed a small crowd of 14 people. The restaurant had a maximum capacity of approximately 50 people. He observed one 32" television monitor located on the front wall of the restaurant above the window, which could not be seen from the exterior of the restaurant. While in the

restaurant, Williams observed round five of an HBO PPV boxing match that he identified as the fight between Pacquiao and Marquez. Williams exited El Taco Torro at approximately 9:35 p.m.

J&J filed this suit against the Defendants, asserting claims for violations of the Communications Act of 1934, 47 U.S.C. § 605 and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C.§ 553 on the grounds that Defendants did not obtain from J&J a license to exhibit the Fight. J&J then served Defendants with a summons and the complaint on December 9 and 10, 2013. The Defendants have not appeared or responded to J&J's Complaint. On January 26, 2015, the Clerk entered default against the Defendants.

J&J now seeks entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b).[1] J&J seeks the maximum amount of statutory damages ($10,000); enhanced damages; $413.00 in costs; and $1,688.75 in attorneys' fees.

## Discussion

J&J's suit is based on 47 U.S.C. §§ 553 and 605. "[T]he interception of cable television programming as it travels through the air is to be governed by § 605, while the interception of cable television programming traveling over a cable network (and specifically, the manufacture and distribution of decoder boxes) is to be governed by § 553(a)." *United States v. Norris,* 88 F.3d 462, 468 (7th Cir. 1996). J&J

---

[1] J&J has filed the requisite affidavit of non-military service. [Dkt. No. 22-1.]

acknowledges that it cannot recover duplicative damages under both sections 553 *and* 605; however, it has pled its claims in the alternative. *See J&J Sports Prods., Inc. v. Gonzales*, 2013 WL 4777209, *2 (S.D. Ind. Sept. 5, 2013) (citing *J&J Sports Prods. v. Aguilera*, 2010 WL 2362189 (N.D. Ill. 2010) ("[A]lthough the precise means of transmission has not been determined, under the circumstances of this case, where Plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of Defendants' failure to appear or defend in this action, Plaintiff should not suffer the resulting prejudice.")).

Under § 605(e)(3)(C)(i) a claimant may elect actual damages or statutory damages. Statutory damages for each violation of § 605 range from $1,000 to $10,000; the amount awarded is based on the court's discretion to arrive at a just amount to compensate for the violation. In addition, enhanced damages are available where the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). In such cases, the court may use its discretion to increase the award of damages by an amount of not more than $100,000 for each violation.[2]

---

[2] Likewise, under § 553(c)(3)(A), a claimant may elect actual or statutory damages. Statutory damages for each violation of § 553 range from $250 to $10,000; the amount awarded is based on the court's discretion to arrive at a just amount to compensate for the violation. 47 U.S.C. § 553(c)(3)(A)(ii). In addition, enhanced damages are available where the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain. 47 U.S.C. § 553(c)(3)(B). However, under § 553, the upper limit for an increase in damages that a court may award in its discretion is $50,000 for each violation. *Id.*

Because Defendants have not appeared in this case, J&J contends that it cannot conduct the necessary discovery to prove actual damages, and, thus, it seeks statutory damages in the maximum amount of $10,000. We know, however, that had Defendants properly obtained a license to legally show the Fight, they would have paid J&J the amount of $2200 based on the capacity of the establishment which was less than 100 persons. [*See* Dkt. No. 22-4; Affidavit of Joseph M. Gagliardi, President of J&J Sports, Dkt. No. 22-4 at ¶ 8.] Accordingly, we exercise our discretion to award $2200 as a just amount to compensate for the violation.

J&J also requests enhanced damages in an unspecified amount that "sufficiently compensates Plaintiff and functions as an effective deterrent." [Dkt. No. 22 at 3-4.] Courts have considered several factors when determining whether and how much enhanced damages are appropriate, including: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event." *Gonzalez*, 2013 WL 4777209, *3 (quoting *Aguilera,* 2010 WL 2362189). Courts also consider "the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.*

J&J provided evidence that the interception of the Fight was intentional: Defendants could not have accidentally or innocently intercepted the signal.

[Gagliardi Aff. at ¶ 9.] Based on this evidence, we conclude that Defendants violation of § 605 was willful. Although there is no evidence that the exhibition of the Fight was publicized in order to attract patrons or that Defendants profited through a cover charge from the Fight's exhibition, the evidence shows that El Taco Torro remained open past its normal hours of operation and welcomed at least one patron, Williams, to order food "for the fight." With this evidence, we can conclude that Defendants' violation of § 605 was done "for purposes of direct or indirect commercial advantage or private financial gain". *See* 47 U.S.C. § 605(e)(3)(C)(ii). We note, although J&J fails to mention, that this is not the first time that Defendants have been sued by J&J for violations of §§ 553 and 605 in connection with the unlawful televising of a boxing match, nor is it the first default judgment rendered against Defendants. *See J&J Sports Prods., Inc. v. Turrubiartes*, Case No. 1:11-cv-1496-WTL-TAB, 2013 WL 3878740, at *2 (S.D. Ind. July 26, 2013) (relating to the showing of a November 14, 2009 fight) (declining an award of enhanced damages in part because there was "no suggestion that El Taco Torro is a repeat offender").

Defendants apparently are not getting the message that they cannot pirate these broadcasts in a way that violates the law. Enhanced damages are thus necessary to deter future violations, particularly where, as here, Defendants are repeat offenders. *See Gonzalez*, 2013 WL 4777209, at *3-4 (awarding $10,000 in enhanced damages where statutory damages of $10,000 were awarded, the program was broadcast to 100-150 people and the court believed a deterrent to defendant and other potential offenders

was necessary) (collecting cases).  Accordingly, we award enhanced damages in the amount of $5000 in an attempt to deter Defendants from violating §§ 553 and 605 in the future.

J&J seeks payment of its attorneys' fees ($1,688.75) and costs ($413.00), pursuant to § 605(e)(3)(B)(iii).  (The court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.") and § 553 (same).  We find J&J's costs and attorneys' fees to be reasonable and supported by the evidence.

For the reasons set forth above, the Court **GRANTS** J&J's motion for default judgment and awards J&J the total amount of $9301.75.  Judgment shall be entered accordingly.

   **IT IS SO ORDERED.**

Date: ___3/2/2017_____    _____
                                                   SARAH EVANS BARKER, JUDGE
                                                   United States District Court
                                                   Southern District of Indiana

Distribution:

Helen V. Cooper
GREENE & COOPER ATTORNEYS LLP
hcooper@greenecooper.com

Charlie William Gordon
GREENE & COOPER PSC
cgordon@greenecooper.com

Kyle A. Cooper
GREENE & COOPER, LLP
kcooper@greenecooper.com

Maria D. Turrubiartes
7853 North Michigan Road
Indianapolis, Indiana 46268

Jose Luis Hernandez
7853 North Michigan Road
Indianapolis, Indiana 46268

Carniceria Mi Mexico, Corp. Inc.
7853 North Michigan Road
Indianapolis, Indiana 46268

Taco Torro a/k/a El Taco Toro Mexican Restaurant
7853 North Michigan Road
Indianapolis, Indiana 46268